## WHITE v. HORTON et al.

No. 9208— Opinion Filed Aug. 20, 1918.

(174 Pac. 540.)

(Syllabus.)

1. **Usury — Written Demand for Return — Pleading and Proof.**

The making of a written demand for the return of usury is a condition precedent to the maintenance of an action for the penalty prescribed by section 1005, Rev. Laws 1910, and such demand must be alleged in the petition and proved at the trial.

2. **Same—Sufficiency of Demand.**

Although demand and refusal are requisite to the right of the plaintiff to commence an action for the recovery of usury paid, yet, when the law does not require any particular form or condition for either, any demand will be sufficient which notifies the lender that the borrower intends to claim the benefits given him by the statutes.

3. **Same.**

In an action for usury instituted jointly by the principal and two sureties, a written demand, signed by one of the plaintiffs only, where the context of the demand discloses that it was made in behalf of all, is a substantial compliance with section 1005, Rev. Laws 1910, requiring a writting demand for the return of the usury paid.

4. **Usury—What Constitutes—Transfer of Property.**

Section 1005, Rev. Laws 1910, which gives a remedy to the person by whom usurious interest has been paid against the person, firm, or corporation taking or receiving the same to recover back twice the amount of interest paid, comprehends the payment of the usurious interest by a transfer of property at an agreed valuation, as well as by payment in money where such transaction was intended as payment by the contracting parties.

5. **Same—Payment of Debt.**

Where one of the sureties on two notes on which usurious interest had been paid agreed with the principal, for a valuable consideration, upon a new and independent contract, to pay the creditor by the transfer of property at an agreed valuation, and the payee accepted the property, marked the notes paid, and delivered them to the surety with the intention that the transaction should constitute a payment and cancellation of said notes, the principal was thereby discharged, and is entitled to recover of the payee the statutory penalty.

6. **Usury—Action for Penalty—Evidence.**

Evidence in this case examined, and held to reasonably support a judgment for plaintiff.

Error from District Court, Kiowa County; Frank Mathews, Assigned Judge.

Action by C. L. Horton and others against H. F. White. Judgment for plaintiffs, and defendant brings error. Affirmed.

Logan & Rakestraw, for plaintiff in error.

Smith, Jones & Smith, for defendant in error C. L. Horton.

RAINEY, J. This action was brought by C. L. Horton, J. E. Horton, and L. S. Watson against H. F. White under section 1005, Rev. Laws Okla. 1910, to recover the penalty therein prescribed for usurious interest paid by the plaintiffs to the defendant. In a trial to a jury in the lower court a verdict was rendered in favor of the plaintiff, C. L. Horton, in the sum of $295.44, and judgment was rendered accordingly. Because of certain alleged errors in the proceedings the defendant has appealed to this court.

It is first contended that the court erred in overruling defendant's demurrer to the plaintiff's petition. The claimed defect in the petition is that it failed to allege that the plaintiffs had made a written demand for the return of the usury. The argument in support of this contention is that the suit was brought jointly by the two Hortons and L. S. Watson, and that the demand attached to the petition was only signed by C. L. Horton, one of the plaintiffs. As already stated, the verdict was rendered for this plaintiff only, and under the proof, he was the only plaintiff entitled to recover. But, passing over what effect this state of the record might have upon the sufficiency of the demand, we find from an inspection of the petition that it alleges that a written demand was served by plaintiffs upon the defendant for the return of the usury, "as shown by a copy of said notice and demand made a part hereof, marked 'Exhibit B.'" The copy of the written demand attached to the petition and the demand offered in evidence reads as follows:

"Mr. H. F. White, Mountain Park, Okla.— Sir: You are hereby notified that on November 21, 1912, you loaned to me $200.00 and required me to give a note for $248.00 due November 21, 1913, with ten per cent. per annum from maturity; that afterwards you loaned to me $250.00 November 30, 1913, and due November 30, 1914, for which you required me to make you a note of $339.72 with interest at ten per cent. from maturity, and further required to place on said note and each of them the names of J. E. Horton and L. S. Watson as principals thereon; that said notes and each of them with said usurious interest therein named of $173.78 by reason of which you became lia-

ble and bound to pay to the makers of said note the full sum of $347.36 and we demand of you the immediate return of such usury, as provided by law. Given this 26th day of April, A. D. 1915. C. L. Horton. (Emphasis ours.)

The making of a written demand for the return of usury is a condition precedent to the maintenance of an action for the penalty prescribed by the statute, and it is settled in this jurisdiction that such demand must be alleged in the petition and proved at the trial. Mitchell v. Clark, 52 Okla. 628, 152 Pac. 354; Texmo Cotton Exch. Bank v. Liston, 61 Okla. 33, 160 Pac. 82.

However, in the last-named case it was held that a copy of the demand need not be attached to the petition as an exhibit. But, assuming the applicability of the general rule that, where an exhibit attached to a pleading is inconsistent with the pleading, the exhibit governs, we do not think that the exhibit (copy of written demand) under consideration is inconsistent with the pleadings. Although this demand was signed by one of the plaintiffs only, it purports to have been made on behalf of all. In Citizens' State Bank of Ft. Gibson v. Strahan, 63 Okla. 288, 165 Pac. 189, this court, in an opinion by Mr. Justice Kane, said:

"The object of requiring the plaintiff to make demand before the commencement of his action undoubtedly is to afford the defendant an opportunity to refund the penalty imposed upon him by statute by taking a rate of interest greater than is allowed by law without being put to the expense and inconvenience of litigation. In these circumstances, any demand which notifies the lender that the borrower intends to claim the benefits given him by the usury law constitutes a substantial compliance with the provisions of section 1005, Rev. Laws 1910, relative to the written demand for the return of the usury paid."

Thus it will be observed that the written demand was in substantial compliance with the statute, and completely fulfilled its purposes.

The two remaining assignments of error, one, that the court erred in overruling the demurrer to the evidence offered by the plaintiff, and the other, that the evidence does not sustain the verdict, are argued together in the briefs and will be so considered here. The contention of the defendant in this respect is that the evidence fails to show payment of usurious interest by C. L. Horton, the plaintiff in whose favor the verdict was returned.

The court, in its charge, of which no complaint is made in the brief, instructed the jury as follows:

"The material question in this case presented to you for your consideration, and the only controverted question for you to decide, is whether or not, when J. E. Horton traded to the defendant a certain school land lease and accepted in part payment for said lease the delivery of the two notes in controversy, it was intended by this transaction as a payment and cancellation of said note, or merely as a transfer of the interest of defendant, White, in said notes to the said J. E. Horton. Therefore, should you find from a fair preponderance of the evidence that the delivery of said notes to J. E. Horton was intended as payment and cancellation of said notes, then your verdict should be for the plaintiff in the sum of $295.44, but should you find that said delivery of said notes to the said J. E. Horton was not intended as a cancellation of said notes, but merely as a transfer thereof to the said J. E. Horton, then your verdict should be for the defendant. In deciding whether or not said notes were paid and canceled, or merely transferred to J. E. Horton, it becomes a material inquiry whether or not J. E. Horton held C. L. Horton liable to him upon the original notes or upon a new and independent indebtedness. Should you find that he held the said C. L. Horton liable to him upon the original notes, then you are instructed, under such conditions, that the notes were not canceled at the time J. E. Horton received the same from the defendant, but if you find that he held the said C. L. Horton liable to him upon a separate and independent indebtedness, then you will find that the notes were canceled at the time the same were delivered to J. E. Horton by defendant."

We will briefly refer to some of the evidence on this, the only disputed point in the case. It appears therefrom that C. L. Horton borrowed the money from the defendant and signed the notes as principal, and that his father, J. E. Horton, and L. S. Watson signed the notes as sureties. The notes were paid in this way: J. E. Horton was the owner of the improvements on a certain tract of school land, which he sold to the defendant for the agreed sum of $1,800. In this transaction the notes of C. L. Horton were paid in full by J. E. Horton, were marked paid by the defendant, or his agent and delivered to J. E. Horton. Some other notes also entered into the transaction, and the balance of the purchase price of the school land improvements was paid J. E. Horton by the defendant. The C. L. Horton notes were taken up by an arrangement between C. L. Horton and J. E. Horton.

C. L. Horton testified that, before his father and Dr. White made the trade above referred to, he and his father had an agreement that his father would trade the land

to Dr. White, and that he (C. L. Horton) would pay his father. The evidence further shows that soon after the transaction J. E. Horton turned the notes over to C. L. Horton, who, at the time of he trial, had already paid J. E. Horton $299. The testimony of Mr. J. E. Horton on this phase of the case was in substantial accord with that of his son.

Under usury statutes, similar to ours, giving the right of action to the party who has paid a greater rate of interest than that allowed by law to recover back twice the amount of interest paid, it has frequently been held that a transfer of property constitutes payment within the purview of the statute, where it was so intended by the contracting parties. First Nat. Bank v. Davis, 135 Ga. 687, 70 S. E. 246, 36 L. R. A. (N. S.) 134; Mann v. Bank of Elkton, 104 Ky. 852, 48 S. W. 413; Alston et al. v. Orr (Tex. Civ. App.) 105 S. W. 234; Sylvester Nelson v. Rowland P. Cooley, 20 Vt. 201; 29 A. & E. Enc. Law, 547.

In First National Bank of Tishomingo v. Latham, 37 Okla. 287, 132 Pac. 891, this court held that property delivered by the debtor to the creditor at an agreed valuation fixed by the parties constituted payment, and was in law equivalent to the payment of so much money. See cases there cited.

After having carefully read all the evidence in the record, we have concluded that the evidence reasonably tends to prove that the notes involved in this case were delivered to J. E. Horton by Dr. White, and were accepted by him in part payment of the school land lease transferred to Dr. White, and that this was done pursuant to an arrangement between the borrower, C. L. Horton, and J. E. Horton upon a new and independent obligation.

There being no reversible error in the record, the judgment is affirmed.

All the Justices concur.